UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA SNYDER,<br>    Plaintiff,<br>    v.<br>NATIONSTAR MORTGAGE LLC,<br>    Defendant. | Case No. 15-cv-03049-JSC<br><br>**ORDER GRANTING IN PART AND DENIES IN PART DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 18 |

Plaintiff Pamela Snyder ("Plaintiff") brings this action challenging the conduct of Defendant Nationstar Mortgage LLC ("Defendant") in relation to a residential mortgage loan. Now pending before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (Dkt. No. 18.) Having reviewed the parties' submissions, and having had the benefit of oral argument on November 12, 2015, the Court GRANTS in part and DENIES in part Defendant's motion. The California Civil Code § 1788.13(e) claim is dismissed with prejudice. Plaintiff's other claims survive, although Plaintiff must amend her complaint to specify that she brings her Fair Credit Reporting Act claim pursuant to 15 U.S.C. § 1681s-2(b)(1)(E) and to identify the specific injunctive relief she seeks pursuant to the Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200-17210.

## BACKGROUND

### I. <u>Complaint Allegations</u>

This action involves real property located at 2548-2550 Sutter Street, San Francisco, California 94115 (the "Property"). (FAC ¶ 3.) In November 2006, Plaintiff took out a mortgage loan from Sierra Pacific Mortgage, Inc., secured by a Deed of Trust against the Property listing

Plaintiff as the borrower.[1]  (*Id.* ¶ 9; Dkt. No. 19 at 2.)  The Deed of Trust secured a debt in the amount of $1,330,000.  (Dkt. No. 19 at 3.)  Along with the Deed of Trust, Plaintiff executed an Escrow Waiver Agreement, under which the lender agreed not to establish an escrow account and Plaintiff agreed to pay all real estate taxes and insurance premiums for the Property directly.  (FAC ¶ 9.)  Thereafter, Plaintiff made timely payments on the loan.  (*Id.*)

In or around May 2012, Plaintiff and her then-servicer, Aurora Loan Services, LLC ("Aurora"), entered into a repayment plan.  (*Id.* ¶¶ 9-10.)  The plan provided that, beginning on June, 15, 2012, Plaintiff would make increased monthly payments for twelve months and, if Plaintiff's payments were timely, Aurora would not report Plaintiff as in default.  (*Id.* ¶ 10.)  Pursuant to the plan, Plaintiff made timely payments on June 15, 2012 and thereafter.  (*Id.*)

In or around July 2012, Defendant acquired the servicing rights to Plaintiff's loan.  (*Id.* ¶ 11.)  Defendant opened an escrow account for the loan, collected escrow funds from Plaintiff's regular mortgage payments, and made payments on Plaintiff's behalf for property taxes and insurance premiums.  (*Id.* ¶¶ 11-12.)  Because Plaintiff's Escrow Waiver Agreement provided that she paid her own property taxes and insurance premiums, her monthly mortgage payments did not account for these additional escrow funds.  (*Id.* ¶¶ 11-12.)  Defendant thus considered Plaintiff's payments insufficient and reported her as in default.  (*Id.* ¶ 13.)

In or around June 2013, Defendant advised Plaintiff that she was in default for a total of $10,553.41.  (*Id.* ¶ 14.)  Plaintiff informed Defendant that this was an error, as Plaintiff not only made timely mortgage payments, but also maintained her own taxes and insurance premiums.  (*Id.*

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Here, Defendant requests that the Court take judicial notice of Exhibit A, which is the Deed of Trust to the Property executed by Plaintiff in securing the mortgage loan at issue in this case.  This document "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201; *see also Chaghouri v. Wells Fargo Bank, N.A.*, No. 14-CV-01500-YGR, 2015 WL 65291, at *1 (N.D. Cal. Jan. 5, 2015) (taking judicial notice of publicly recorded documents).  Therefore, the Court GRANTS Defendant's request for judicial notice of this document.

1  (¶¶ 11, 14.) Accordingly, Defendant reversed the escrow payments and refunded Plaintiff in the
2  amount of $2,106.69. (*Id.* ¶ 15.) Approximately one month later, however, Defendant advised
3  Plaintiff that there was still an escrow balance on her account. (*Id.*) Then, in 2014, Defendant
4  opened a second escrow account for Plaintiff's loan even though Plaintiff remained current on her
5  payments. (*Id.* ¶ 16.)

6  Throughout this period, Defendant (1) reported Plaintiff as in default to credit reporting
7  agencies and (2) made automated phone calls to Plaintiff. (*Id.* ¶¶ 17, 21.) Following her
8  unsuccessful attempts to open lines of credit, Plaintiff disputed her negative credit reports. (*Id.*
9  ¶ 17.) She did so on three separate occasions: in 2013, 2014, and 2015. (*Id.* ¶¶ 18-20.) First, in
10 July 2013, Plaintiff contacted several credit reporting agencies who, in turn, asked Defendant to
11 conduct an investigation. (*Id.* ¶¶ 18, 36.) Defendant subsequently removed some, but not all, of
12 Plaintiff's negative reports. (*Id.* ¶¶ 18, 36.) Second, in mid to late 2014, Plaintiff again contacted
13 the credit reporting agencies—including Experian, Equifax, and Transunion—to dispute the
14 negative reports. (*Id.* ¶¶ 19, 37.) Rather than remove the reports, Defendant filed an additional
15 nine negative reports. (*Id.* ¶¶ 19, 37.) Finally, in January 2015, Plaintiff attempted to clear her
16 record by contacting the credit reporting agencies. (*Id.* ¶¶ 20, 38.) Although all of the reports
17 were incorrect, Defendant willfully refused to remove them. (*Id.* ¶¶ 20, 38, 40.)

18 Also during this period, Defendant called Plaintiff eight to ten times per day, every day,
19 between the hours of 5:00 a.m. and 11:00 p.m., for a two-year period. (*Id.* ¶¶ 21, 46.) When
20 Plaintiff returned Defendant's automated calls, as Defendant's message instructed, Defendant
21 claimed that Plaintiff was represented by counsel, and thus refused to speak to her. (*Id.* ¶¶ 21, 46.)
22 Even after Plaintiff's counsel granted Defendant the authority to speak with Plaintiff regarding the
23 loan, Defendant continued its automated calls to Plaintiff yet refused to speak with her. (*Id.* ¶¶ 21,
24 46.)

25 **II.   Procedural History**

26 Plaintiff initiated this action on June 30, 2015. (Dkt. No. 1.) Plaintiff has since filed the
27 FAC, in which she brings five causes of action for violations of: (1) California Civil Code § 2954;
28

1   (2) the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); (3) California Civil Code §§ 1788.11(d)
2   and (e); (4) California Civil Code § 1788.13(e); and (5) the Unfair Business Practices Act, Cal.
3   Bus. & Prof. Code §§ 17200-17210.  (FAC at 1.)  Plaintiff seeks an order requiring Defendant to
4   show cause why it should not be enjoined during the pendency of this lawsuit (but Plaintiff does
5   not indicate what particular conduct she seeks to enjoin), disgorgement of monies Defendant
6   wrongfully obtained, compensatory damages, statutory damages, attorneys' fees and costs, and
7   exemplary damages.  (*Id.* at 14.)  Defendant now moves the Court to dismiss Plaintiff's FAC
8   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 18.)

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citations and quotations omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  "Determining whether a

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendant seeks to dismiss all but the California Civil Code section 2954 claim.

### I. Fair Credit Reporting Act

In the second cause of action, Plaintiff alleges that Defendant violated the Fair Credit and Reporting Act ("FCRA") by failing to correct inaccuracies on Plaintiff's credit report. To ensure that credit reports are accurate, the FCRA imposes duties on entities called "furnishers," which are the sources that provide credit information to credit reporting agencies. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009). In this case, Defendant filed negative reports against Plaintiff (FAC ¶ 35), and is therefore a "furnisher" of information under the FCRA.

Section 1681s-2 of the FCRA sets forth furnishers' responsibilities, delineating two categories of responsibilities. *Gorman*, 584 F.3d at 1154. Subsection (a) imposes the duty to "provide accurate information." *Id.* Subsection (b) details five distinct duties. *Id.* "These duties arise only after the furnisher receives notice of dispute from a [credit reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Id.*; *see also* § 1681i(a)(2) (requiring credit reporting agencies to promptly notify a furnisher regarding all relevant information about the consumer's dispute). After receiving notice of a dispute regarding the "completeness or accuracy of any information" the furnisher provided, the furnisher must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681(i)(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

§ 1681s-2(b)(1). Any investigation by the furnisher under this provision must be "reasonable." *Gorman*, 584 F.3d at 1157.

"The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements." *Id.* at 1154; *see also* § 1681n (providing a private cause of action for willful noncompliance with the FCRA); § 1681o (providing a private cause of action for negligent noncompliance with the FCRA). This private right of action is limited, however, to claims pertaining to any of the duties enumerated in subsection (b). § 1681s-2(c) ("Except [for circumstances not relevant here], sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder."); *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002); *King v. Bank of Am., N.A.*, No. C–12–04168 JCS, 2012 WL 4685993, at *5 (N.D. Cal. Oct. 1, 2012). "Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." *Gorman*, 584 F.3d at 1154; *see also* § 1681s-2(d). Therefore, Plaintiff's only actionable claims against Defendant must fall within section 1681s-2(b) of the FCRA.

As a threshold matter, Plaintiff alleges that Defendant violated section 1681s-2(b) in general, without identifying the particular subsection of which Defendant's conduct runs afoul. Some courts have found this insufficient to state a claim. *See, e.g.*, *Botti v. Trans Union LLC*, No. C 11–04519 SBA, 2012 WL 1595109, at *3 (N.D. Cal. May 4, 2012) ("Because the complaint

does not identify a specific provision of the FCRA that Defendant violated by refusing to provide credit reports and scores to third parties, Plaintiff has failed to state a cognizable claim under the FCRA."); *cf. King*, 2012 WL 4685993, at *1 (the plaintiff alleged that the defendant violated section 1681s-2(b)(1)(A) by failing to reasonably investigate her dispute after receiving notice from a credit reporting agency and section 1681s-2(b)(1)(E) by failing to correct inaccuracies on her credit report). On the other hand, it is the substance of a plaintiff's allegations, not the label, that controls. *See Am. Home Assur. Co. v. Miller*, 717 F.2d 1310, 1312 (9th Cir. 1983). Construing the FAC in Plaintiff's favor, Plaintiff is alleging a violation under part (E) of subsection (b)(1), as Plaintiff claims that Defendant "violated [section] 1681s-2(b) by [willfully] refusing to correct its erroneous reporting." (FAC ¶¶ 39-40; *see also* Dkt. No. 24 at 6 (contending that Plaintiff's claim is "premised on the allegation that after its investigation, Defendant refused to remove the incorrect credit reports").) *See* § 1681s-2(b)(1)(E) (requiring furnishers to modify, delete, or permanently block reporting of information disputed by a consumer deemed to be inaccurate, incomplete, or unverified after an investigation). Indeed, at oral argument Plaintiff confirmed that she brings her claim under subsection (b)(1)(E). The Court will therefore evaluate Defendant's motion to dismiss under the assumption that the FCRA claim is brought pursuant to subsection (b)(1)(E).

"To state a claim under the FCRA against . . . a furnisher of credit information, the [p]laintiff must allege that (1) [s]he contacted the [credit reporting agency]; (2) the [credit reporting agency] pursued the claim; and (3) the [credit reporting agency] contacted the [furnisher] regarding the dispute, triggering the [furnisher's] duty to [comply with the terms of subsection (b).]" *King*, 2012 WL 4685993, at *5 (internal citation and quotation marks omitted). When a plaintiff brings a claim under section 1681s-2(b), she may base her allegations on negligent noncompliance under section 1681o, or willful noncompliance under section 1681n. *Id.* Under section 1681n, a plaintiff alleging willful violation of the FCRA may seek either actual damages or "damages of not less than $100 and not more than $1,000," as well as punitive damages and reasonable attorney's fees. § 1681n(a)(1)(A). "Because a plaintiff may recover actual or statutory

7

damages under [section] 1681n, that section does not require a plaintiff to allege actual damages." *King*, 2012 WL 4685993, at *5. Here, Plaintiff claims that Defendant's willful refusal to remove the erroneous credit reports subjects Defendant to liability pursuant to section 1681n. (FAC ¶ 40.) She thus need not allege actual damages. Because Plaintiff conceded at oral argument that her FCRA claim is limited to the incidents occurring in 2013 and 2015, the Court addresses these incidents only. As set forth below, Plaintiff adequately alleges a section 1681s-2(b)(1)(E) claim with respect to both incidents.

### A.  2013 Dispute

Plaintiff contacted the credit reporting agencies in July 2013 to dispute various negative reports Defendant filed against her. (*Id.* ¶ 36.) In turn, the credit reporting agencies requested that Defendant undertake an investigation as to whether Plaintiff defaulted on her mortgage payments. (*Id.*) Defendant's statutory duties thus required it to engage in an investigation. *See* § 1681s-2(b)(1)(A). If the investigation found a problem with the previously reported information, the FCRA then dictates that Defendant must prevent future misreporting by modifying, deleting, or blocking the inaccurate item, as appropriate.[2] *See* § 1681s-2(b)(1)(E). That Defendant removed *some* information is not sufficient. Indeed, "[t]he most thorough investigation means nothing . . . if the results of the investigation are not put to good use." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012).

To the extent that Plaintiff alleges that Defendant did not remove *all* of the inaccurate information on her credit reports, she adequately alleges a violation of part (E). *See, e.g.*, *Singh v. Discover Bank*, No. 14–cv–05496–JCS, 2015 WL 1089443, at *6 (N.D. Cal. Mar. 4, 2015) (finding that the plaintiff adequately alleged a claim under FCRA because, in part, she alleged that the information in her account was incorrect and that the defendant did not correct the errors). An item on a credit report can be "incomplete or inaccurate" within the meaning of section 1681s-2(b)

---

[2] Contrary to Defendant's suggestion that "the FCRA only imposes an *investigation* obligation" (Dkt. No. 26 at 7) (emphasis added), the "FCRA confers a private right of action upon consumers and allows them to sue a furnisher of credit information if such furnisher breaches *any* of the duties enumerated in section 1681s-2(b)." *King*, 2012 WL 4685993, at *5 (emphasis added).

"because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890 (internal citation and quotation marks omitted). Given that Plaintiff alleges that the information contained in her credit reports was inaccurate or incomplete (FAC ¶¶ 1, 13-14, 18-20, 38), that the information impacted her ability to open lines of credit (*id.* ¶ 17), and that Defendant removed only some of the incorrect information (*id.* ¶ 36), she sufficiently alleges a violation of part (E). *Cf. Giovanni v. Bank of Am., Nat. Ass'n*, No. C 12-02530 LB, 2012 WL 6599681, at *5 (N.D. Cal. Dec. 18, 2012) (granting motion to dismiss because the plaintiff failed to allege that the information the defendant reported was incorrect, and thus the defendant had no obligation to fix the report). Whether the information was, in fact, accurate is a question of fact to be resolved at later stages of litigation. *See, e.g.*, *Wang v. Asset Acceptance LLC*, No. C 09-04797 SI, 2010 WL 2985503, at *7 (N.D. Cal. July 27, 2010) ("The question of whether [the defendant] acted appropriately in this case [under section 1681s-2(b)(1)(E)] . . . is a question of fact to be resolved at a later date."). Thus, Plaintiff sufficiently alleges a claim for violation of part (E) in connection with Plaintiff's dispute of negative credit reports in 2013.

### B.  2015 Dispute

Plaintiff alleges that in 2015 she again contacted the credit reporting agencies to dispute the additional reports on her record, that the credit reporting agencies contacted Defendant, and that Defendant refused to remove all of the erroneous reports. (FAC ¶ 38.) Defendant takes issue with these allegations for two reasons: first, that Plaintiff cannot allege a violation under part (E) because she fails to allege a violation under part (A); second, that Plaintiff is seeking to state a claim under section 1681s-2(a), which does not provide for a private right of action. These arguments are unpersuasive.

As an initial matter, "the duties imposed upon furnishers . . . under [section] 1681s-2(b) are independent and severable." *Wang*, 2010 WL 2985503, at *5. Indeed, the "FCRA confers a private right of action upon consumers and allows them to sue a furnisher of credit information if such furnisher breaches *any* of the duties enumerated in section 1681s-2(b)." *King*, 2012 WL

9

4685993, at *5 (emphasis added). Thus, Plaintiff need not allege that Defendant failed to investigate in order to allege that Defendant failed to remove inaccurate information. Moreover, as discussed above, to the extent that Plaintiff alleges the reports were inaccurate, Defendant was required to remove them. Plaintiff does just that. (FAC ¶ 38.)

Defendant's second argument—that Plaintiff is seeking to state a claim under section 1681s-2(a), which does not provide for a private right of action—also fails, as it was not raised until the reply brief. *See, e.g.*, *Bernard v. Donat*, No. 11–cv–03414–RMW, 2012 WL 10138, at *3 (N.D. Cal. Jan. 2, 2012) ("[T]he court agrees with plaintiff that consideration of arguments raised for the first time on reply would prejudice plaintiff if he is not given an opportunity to respond."); *see also Jones v. Baker*, No. 2:09–cv–2091 JFM (PC), 2010 WL 1992196, at *3 (E.D. Cal. May 13, 2010) ("Generally, the court cannot grant a motion to dismiss on a new argument presented for the first time in a reply brief."). Notwithstanding Defendant's timing, the argument also fails on its merits. Plaintiff bases her allegations on Defendant's *failure to remove* inaccurate information, not Defendant's reporting of the information in the first instance. *See, e.g.*, *Corby v. Am. Express Co.*, No. CV 10–05575 ODW (JCx), 2011 WL 4625719, at *6 (C.D. Cal. Oct. 5, 2011) (noting that the plaintiff alleged a violation under section 1681s-2(a), for which the plaintiff could not sustain a private right of action, because the allegation specifically referred to the defendant's wrongful *reporting*). Therefore, Plaintiff sufficiently states a violation of part (E) regarding her 2015 dispute.

\* \* \*

In sum, Plaintiff has adequately alleged a section 1681s-2(b)(1) claim with respect to the 2013 and 2015 disputes. Although the factual allegations state a claim for violation of part (E), the Court directs Plaintiff to amend her complaint to specify she is seeking relief under part (E) of section 1681s-2(b)(1).

### II. Rosenthal Fair Debt Collection Practices Act, §§ 1788.11(d) & (e)

Plaintiff's third cause of action alleges a violation of sections 1788.11(d) and (e) of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). Section 1788.11 of the RFDCPA

10

prohibits a debt collector from "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called" or "[c]ommunicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Cal. Civ. Code § 1788.11(d)-(e); *see also Krapf v. Nationwide Credit Inc.*, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, at *3 (C.D. Cal. May 21, 2010).

Defendant asserts that Plaintiff has insufficiently pled a violation of section 1788.11 on three grounds: first, that Plaintiff's claim is time-barred; second, that Plaintiff fails to allege sufficient facts to plausibly allege a violation; and third, that Plaintiff fails to allege damages.

### A. Plaintiff's Claim Is Not Time-Barred

The statute of limitations for a violation of sections 1788.11(d) and (e) is one year. § 1788.30(f). Plaintiff filed this lawsuit on June 30, 2015. (Dkt. No. 1.) Given Plaintiff's concession at oral argument that her RFDCPA claim is limited to calls occurring on or after July 1, 2014, her claim is timely.

### B. Plaintiff's Claim Is Adequately Pled

"Courts have required factual particularity regarding the dates and contents of alleged communications for [RFDCPA] claims." *Lopez v. Prof'l Collection Consultants*, No. CV 11–3214 PSG (PLAx), 2011 WL 4964886, at *2 (C.D. Cal. Oct. 19, 2011) (granting motion to dismiss because, in part, the plaintiff neither alleged specific dates of contact by the defendant *nor* a range of dates); *see, e.g.*, *Bernardi v. Deutsche Bank Nat'l Trust Co. Am.*, No. C–11–05453 RMW, 2013 WL 163285, at *6 (N.D. Cal. Jan. 15, 2013) (dismissing the plaintiffs' FDCPA claim because they did not identify any specific dates, statements, or time period of the defendants' conduct); *Gates v. Wachovia Mortg., FSB*, No. 2:09–cv–02464–FCD/EFB, 2010 WL 2606511, at *4 (E.D. Cal. June 28, 2010) (dismissing an RFDCPA claim where complaint alleged date and time of six collection calls, but failed to allege nature of the calls). A plaintiff must allege more than a defendant's "communications" or a "high volume of phone calls" to state a claim under the RFDCPA. *Fullmer v. JP Morgan Chase Bank, N.A.*, No. 2:09-cv-1037 JFM, 2010 WL 95206, at *7 (E.D. Cal. Jan. 6, 2010); *cf. Blaxill v. Arrow Fin. Servs., LLC*, No. 5:10–CV–04520 JF (PSG), 2011 WL

11

1299350, at *1 (N.D. Cal. Apr. 4, 2011) (holding that the plaintiff failed to state a claim because the complaint stated only that the defendant engaged in "communications"). Indeed, "[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002). Courts differ, however, as to the amount or pattern of calls sufficient to constitute intent to annoy, harass, or oppress. *See Krapf*, 2010 WL 2025323, at *3-*4 (discussing what evidence is sufficient to raise a triable issue of fact at summary judgment stage). Although there is no bright-line rule, courts generally find certain conduct to constitute harassment. *See Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1227 (E.D. Cal. 2010). Examples of harassing behavior include "making a high volume of calls, calling the debtor immediately after hanging up, calling at odd hours, calling at the debtor's place of employment, or calling multiple times in a single day." *Johnson v. Portfolio Recovery Assocs., LLC*, No. CV 12–4261 PSG (AJWx), 2013 WL 10156241, at *7 (C.D. Cal. June 24, 2013); *see, e.g.*, *Crockett v. Rash Curtis & Assocs.*, 929 F. Supp. 2d 1030, 1032-33 (N.D. Cal. 2013) (denying motion to dismiss FDCPA and RFDCPA claims because the plaintiff alleged that the defendant called her at least 22 times even though the defendant likely realized from the contents of her outgoing answering-machine message that it was calling the wrong number); *Stirling v. Genpack Servs., LLC*, No. 2:11–cv–06369–JHN–MANx, 2012 WL 952310, at *24 (C.D. Cal. Mar. 19, 2012) (denying summary judgment because a reasonable trier of fact could conclude that making 649 calls to the plaintiff over 115 days, with an average of five to six calls per day, every day, was sufficient to establish liability under the FDCPA); *Jiminez v. Accounts Receivable Mgmt., Inc.*, No. CV 09–9070–GW (AJWx), 2010 WL 5829206, at *5 (C.D. Cal. Nov. 15, 2010) (noting that an "unacceptable pattern of calls" would include, among others, calling outside of the hours of 8 a.m. to 8 p.m., regularly calling multiple times per day, and calling back after the plaintiff had spoken to or hung up on one of the defendant's agents); *Arteaga*, 733 F. Supp. 2d at 1228 (noting that calling numerous times per day and calling the debtor outside of her home or calling her family members could constitute harassment under the FDCPA). Further, a debt collector may harass a debtor by continuing to call

the debtor after the debtor has requested that the debt collector cease and desist communication. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). This analysis applies equally to FDCPA and RFDCPA claims. *Arteaga*, 733 F. Supp. 2d at 1229; *see also Joseph*, 238 F. Supp. 2d at 1158.

Here, the FAC does more than merely state that Plaintiff received calls from Defendant. *Cf. Blaxill*, 2011 WL 1299350, at *1. Plaintiff alleges that she received an average of eight to ten automated calls a day, seven days a week, between the hours of 5:00 a.m. and 11:00 p.m. (FAC ¶ 46.) Although Plaintiff does not provide specific dates, she does provide a range of dates—between July 2012 and late 2014—and alleges that she received calls every day. *See, e.g.*, *Crockett*, 929 F. Supp. 2d at 1031, 1033 (denying motion to dismiss RFDCPA claim even though the plaintiff only alleged that the defendant called her at "various" times); *cf. Lopez*, 2011 WL 4964886, at *2 (granting motion to dismiss RFDCPA claim because the plaintiff did not allege the period of time during which the defendant's conduct occurred). With regard to the content of the calls, Plaintiff alleges that Defendant "demand[ed] Plaintiff" to call back, and when she did, Defendant "refused to speak to Plaintiff on the premise that she was represented by counsel." (FAC ¶ 46.) Plaintiff further alleges that "[d]espite Plaintiff's and her alleged counsel's repeated efforts in advising Defendant that this was not the case and that Defendant needed to communicate with Plaintiff, this repeated pattern of harassment did not cease." (*Id.*) Plaintiff thus alleges that Defendant called multiple times in a single day, every day, over a two-year period; called at odd hours; and continued calling even though Defendant refused to speak with her. As such, Plaintiff specifies the period over which the calls occurred, the content of the calls, and the harassing nature of the calls. These facts are sufficient to state a claim under the RFDCPA.

### C. Plaintiff Adequately Alleges Damages

Section 1788.30 of the California Civil Code governs damages under the RFDCPA. Subsection (a) provides that a debt collector who violates the RFDCPA is liable for "any actual damages sustained by the debtor as a result of the violation." Cal. Civ. Code § 1788.30(a). Under the RFDCPA, actual damages include damages for emotional distress. *See, e.g.*, *Costa v. Nat'l*

13

*Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1077 (E.D. Cal. 2007) (stating that a "plaintiff may recover . . . actual damages, including damages for emotional distress, sustained as a result of [the] defendant's conduct in violation of the [RFDCPA]").

In addition to actual damages, a court may award statutory damages for willful and knowing violations of the RFDCPA in an amount between $100 and $1,000. § 1788.30(b); *see also Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008). A court need not award actual damages in order to award statutory damages. *See, e.g.*, *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1006 (2013) (noting that the plaintiff requested and received statutory damages under the RFDCPA even though she neither alleged nor received actual damages); *see also Mejia v. Marauder Corp.*, No. C06-00520 HRL, 2007 WL 806486, at *10 (N.D. Cal. Mar. 15, 2007) ("Statutory damages are available without proof of actual damages [under the RFDCPA].").

Here, Plaintiff states that she "seeks actual damages" and "statutory penalties." (FAC ¶ 48.) Although Plaintiff does not state the amount she seeks in damages, she states that she suffered "economic damages" and "pain and suffering." (*Id.*) Elsewhere in the FAC she further alleges that she did not owe the debt, she amassed additional arrears, and suffered from loss of appetite, frustration, fear, anger, helplessness, nervousness, sleeplessness, and the like. (*Id.* ¶ 30.) Construing the FAC in Plaintiff's favor, this amounts to "economic damages" and "pain and suffering." However, Plaintiff does not allege how harassing phone calls caused her additional arrears. Therefore, Plaintiff has only plausibly alleged actual damages based on emotional distress. *See, e.g.*, *Myers*, 543 F. Supp. 2d at 1218 (awarding compensatory damages under the FDCPA and RFDCPA because, in part, the plaintiff paid the debt in full, the agency made repeated phone calls and threats, garnished her wages, and reported alleged debt to major credit reporting agencies, causing severe emotional distress). Plaintiff satisfactorily alleges statutory damages in that she alleges Defendant's actions were willful and knowing. (FAC ¶ 47.) Because Plaintiff has adequately alleged a violation of the RFDCPA that entitles her to statutory damages and has adequately alleged pain and suffering proximately caused by Defendant's harassing phone

14

calls, she has adequately alleged damages.

### III. Rosenthal Fair Debt Collection Practices Act, § 1788.13(e)

Plaintiff's fourth cause of action alleges a violation of section 1788.13(e) of the RFDCPA. Because Plaintiff conceded at oral argument that she is no longer pursuing this claim, the Court dismisses it without leave to amend.

### IV. Unfair Business Practices Act

Plaintiff brings her fifth cause of action against all Defendants, alleging that their conduct violates California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. (FAC at 13.) The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. Each prong—unlawful, unfair, and fraudulent—is independently actionable. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007); *Cel-Tech Comm'cns, Inc. v. Los Angeles Cellular*, 20 Cal. 4th 163, 185 (1999). In the FAC, Plaintiff alleges in a conclusory manner that Defendants' conduct violates all three prongs of the UCL. (FAC ¶ 56.)[3] At oral argument, however, Plaintiff confirmed that she is bringing an unlawful business practices claim.

Defendant contends that Plaintiff's UCL claim fails because Plaintiff (1) lacks standing, (2) fails to allege a predicate claim to premise her UCL claim upon, and (3) fails to plead facts showing she is entitled to relief.

#### A. Plaintiff Has Standing

To adequately allege injury—and therefore establish standing—for a UCL claim, plaintiffs must show that they personally lost money or property "as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330 (2011). "There are innumerable ways in which economic injury from unfair competition may be shown[,]" including alleging to have "a present or future property interest diminished; [to] be deprived of money or

---

[3] The FAC inexplicably restarts the numbering of paragraphs at the UCL cause of action. For clarity's sake, the Court continues the numbering from the previous sections such that paragraphs one through nine become 55 through 63.

15

1  property to which he or she has a cognizable claim; or [ ] be required to enter into a transaction,
2  costing money or property, that would otherwise have been unnecessary." *Kwikset Corp.*, 51 Cal.
3  4th at 323.

4  Here, Plaintiff alleges that she was damaged by the unfair competition inasmuch as she
5  "suffered various injuries according to proof at trial, including but not limited to the destruction of
6  her credit." (FAC ¶ 61.) "[D]amage to credit is a 'loss of money or property' within the meaning
7  of the UCL." *Rubio v. Capital One–Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *see, e.g.*, *Pulley v.*
8  *Wells Fargo Bank, N.A.*, No. 13-cv-05904 NC, 2015 WL 1393417, at *9 (N.D. Cal. Mar. 26,
9  2015) (finding that the plaintiff stated a claim for violation of the UCL because the plaintiff
10 alleged that, as a result of the defendant's conduct, he suffered destruction in credit, among other
11 things). Thus, while destruction of credit can confer standing under the UCL, the plaintiff must
12 connect that injury to the unlawful conduct alleged. *See Ha v. Bank of Am., N.A.*, No. 5:14-cv-
13 00120-PSG, 2014 WL 6904567, at *3 (N.D. Cal. Dec. 8, 2014) (footnote omitted); *see also*
14 *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013) (finding lack of
15 standing under the UCL where the plaintiff did not attribute the alleged harm to the defendant's
16 alleged unlawful conduct). Because the FAC states that Plaintiff suffered this injury as a result of
17 Defendant's conduct (FAC ¶¶ 1, 13-14, 17, 61), Plaintiff has sufficiently alleged a causal
18 connection between the UCL violation and her loss of money. She therefore has standing to bring
19 a claim under UCL.

### B. Plaintiff Adequately Alleges Predicate Unlawful Acts

21 "An unlawful business practice or act within the meaning of the UCL is an act or practice,
22 committed pursuant to business activity, that is at the same time forbidden by law." *Pinel v.*
23 *Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 937 (N.D. Cal. 2011) (internal quotation marks
24 omitted) (quoting *People ex rel. Harris v. Pac. Anchor Transp., Inc.*, 195 Cal. App. 4th 765, 773
25 (2011)). The "unlawful" prong of the UCL covers a wide range of conduct, *see CRST Van*
26 *Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation
27 marks and citations omitted), including violations of other statutes. *See Freeman v. Time, Inc.*, 68

16

F.3d 285, 289 (9th Cir. 1995) (noting that a UCL claim may be grounded upon a violation of a statute); *see, e.g.*, *Long v. Nationwide Legal File & Serve, Inc.*, No. 12–CV–03578–LHK, 2013 WL 5219053, at *18 (N.D. Cal. Sept. 17, 2013) (acknowledging that the plaintiffs' UCL claim was premised on violations of the FDCPA and RFDCPA, but denying summary judgment because the plaintiffs did not demonstrate liability under the predicate claims as a matter of law). However, the UCL is not a standalone claim, so where it is premised on the same acts alleged in other causes of action in the complaint, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts. *See Lomely v. JP Morgan Chase Bank, N.A.*, No. 12-CV-1194, 2012 WL 4123403, at *5 (N.D. Cal. Sept. 17, 2012) (dismissing a UCL "unlawful" prong claim because the predicate claim on which it relied had also been dismissed).  As Plaintiff's FCRA and RFDCPA claims survive, Plaintiff has successfully alleged predicate acts upon which her UCL claim may be grounded. *See Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) ("As the Court has denied Defendants' motion to dismiss with respect to Plaintiff's false designation of origin claim, Plaintiff has sufficiently alleged a UCL claim.").  Moreover, Plaintiff's first cause of action—violation of section 2954 of the California Civil Code—remains unchallenged.[4]  Thus, Plaintiff's UCL claim for unlawful business practices is sufficiently pleaded based on a predicate violation of section 2954, as well.  Therefore, Plaintiff has adequately alleged predicate unlawful acts.

### C. Plaintiff Alleges That She Is Entitled to Some Relief

"Prevailing [UCL] plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech*, 20 Cal. 4th at 179.

---

[4] Defendant argues that Plaintiff may not predicate her UCL claim on her first cause of action because, under that claim, she seeks damages.  Although there is no case law quite on point, the California Supreme Court has held that "the standards for establishing standing under section 17204 and eligibility for restitution under section 17203 are wholly distinct." *Kwikset*, 51 Cal. 4th at 336.  "That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them." *Id.* Following this reasoning, Plaintiff's ability to premise her claim—and thus bring suit under the UCL—on a statute that allows for recovery of damages should not be dependent upon her eligibility for relief.

Here, Plaintiff seeks "restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper." (FAC ¶ 63). Although Plaintiff does not specifically address it within this cause of action, she adequately alleges restitution based on her allegations that Defendant wrongfully collected escrow funds from her regular mortgage payments. (*See id.* ¶¶ 11-12.) However, attorneys' fees and costs of suit are not recoverable under the UCL. *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1266 (1992).

In addition, Plaintiff seeks "injunctive relief enjoining Defendant from engaging in the unfair business practices described herein." (FAC ¶ 62.) Because Plaintiff fails to state what particular unfair business practices she seeks to enjoin, her request for injunctive relief is not sufficiently stated. *See, e.g.*, *O'Connor v. Wells Fargo, N.A.*, No. C–14–00211 DMR, 2014 WL 4802994, at *8 (N.D. Cal. Sept. 26, 2014) (dismissing the plaintiff's claim because the plaintiff did not specify what conduct he sought to enjoin). In any event, Plaintiff cannot seek to enjoin Defendant from charging escrow items, making harassing phone calls, or making erroneous credit reports, as Plaintiff has not alleged that any of that conduct is ongoing. *See In re Napster*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (granting motion to dismiss the defendant's UCL counterclaim because the defendant failed to allege that it suffered any ongoing injury from the plaintiffs' conduct). However, to the extent Plaintiff seeks to enjoin Defendant from refusing to remove the erroneous reports, Plaintiff alleges sufficient facts to show that this conduct is ongoing, entitling her to injunctive relief. The Court thus grants Plaintiff leave to amend so that she may state what particular conduct she seeks to enjoin.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss in part. The Court dismisses without leave to amend: (1) the section 1788.13(e) claim; and (2) the UCL claim insofar as Plaintiff seeks to recover attorneys' fees. The Court also dismisses the UCL claim for injunctive relief with leave to amend to specify the injunctive relief Plaintiff seeks as she represented at oral argument. The amended complaint, if any, shall be filed by December 1, 2015.

Any amended complaint shall also specify that Plaintiff brings her FCRA claim pursuant to section 1681s-2(b)(1)(E).

**IT IS SO ORDERED.**

Dated: November 13, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge